UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MIA WILLIAMS,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No: 6:16-cv-731-Orl-41TBS

COVENTRY HEALTH CARE OF
FLORIDA, INC., COVENTRY HEALTH
CARE, INC., AETNA LIFE INSURANCE
COMPANY, AETNA INC. and AETNA
MEDICAID ADMINISTRATORS, LLC,

    Defendants.
_____

## REPORT AND RECOMMENDATION

This case is before the Court, with oral argument, on the parties' Joint Motion and Brief in Support of Final Approval of Settlement (Doc 92), and Plaintiff's Counsel's Brief in Support of Attorney's Fees and Costs to be Paid under the Settlement Agreement (Doc. 93). During a fairness hearing on September 18, 2017, I expressed concerns about the parties' agreement (Docs. 95, 96). In response to my concerns, the parties have made supplemental filings, including a Revised Settlement Agreement and Release (Doc. 98-1). Because the Revised Settlement Agreement and Release does not resolve my concerns, I respectfully recommend that the parties' joint motion, as supplemented, be **DENIED**.

### II. Background[1]

Plaintiff Mia Williams, individually and on behalf of similarly situated employees of

---

[1] The matters in this section appear in the parties' joint motion and are taken as stipulated (Doc. 92).

the Defendants, filed her complaint in state court (Doc. 2), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, based on Defendants exempting her and other Long Term Care ("LTC") Case Managers from the overtime provisions of the FLSA. Plaintiff was employed by the Defendants as an LTC Case Manager providing case management and related services to enrollees in Florida's Statewide Medicaid Managed Care Program. In her complaint, Plaintiff sought to represent a class of similarly situated LTC Case Managers who were employed by Defendants in the state of Florida from three years prior to the date of filing her complaint (March 10, 2016) through the present. On April 28, 2016, the Defendants removed the case (Doc. 1) and filed an answer denying Plaintiff's allegations (Doc. 11).

On August 31, 2016, the parties filed a stipulated motion for conditional certification of the class pled by Plaintiff and for authorization to send notice to the class (Doc. 23). The motion was granted on November 28, 2016 (Docs. 23, 36). When the Court entered its Order adopting my Report and Recommendation to conditionally certify the class, six individuals, including Plaintiff, had opted in to the case by filing consents to join. After the notice went out, an additional twenty-seven individuals filed consents to join the case.[2] In their consents to join the case, each Opt-In Plaintiff designated Plaintiff's counsel to represent them. Each Opt-In Plaintiff also designated Plaintiff to make decisions for them regarding all matters relating to this case, including the agreement regarding Plaintiffs' counsel's fees and costs.

The parties engaged in substantial and extensive discovery relating to the claims of the Plaintiff and each Opt-In Plaintiff and they now stipulate that the case has been

---

[2] The thirty-three plaintiffs are identified in Doc. 98-1 at 9.

thoroughly investigated.

On November 21, 2016, the parties participated in a settlement conference, which was unsuccessful (Doc. 40). On April 24, 2017, however, they attended a full-day mediation in Orlando, before certified mediator Jay Cohen. At the conclusion of the mediation, the parties reached the settlement reflected in their Settlement Agreement and Release (Doc. 92-1).

The Settlement Agreement provides for payment by Defendants of the total sum of $1,500,000.00. Of this total sum, $976,000.00 is to be paid to Plaintiff and the 32 Opt-In Plaintiffs as unpaid overtime damages, allocated to each individual based upon various factors, including dates of employment, annual salary, opt-in date, and amount of paid/unpaid leave taken. The Settlement Agreement further provides for payment of service payments to Plaintiff Mia Williams in the amount of $4,000.00, Opt-in Plaintiff Myrlene Warren in the amount of $1,000.00, and Opt-in Plaintiffs Alexandra Jolly, Altoniece Mahabir, and Vanessa Martinez in the amount of $500.00 each, in recognition of their services on behalf of the class. Plaintiffs' counsel will receive $500,000.00 in attorney's fees and an amount not to exceed $17,500.00 as costs, which includes the costs of administration of the settlement. In exchange for this consideration, the Plaintiff and Opt-In Plaintiffs have agreed to release their claims for overtime under the FLSA up to and through the date of the execution of the Settlement Agreement and to dismiss the case with prejudice. In order to receive the payment amount, the Plaintiff and Opt-In Plaintiffs are also required to execute and return a Claim Form acknowledging their understanding of the settlement and its terms, including the amount each will receive, and the scope of the release.

According to the parties, Plaintiff's counsel has provided by mail to the Opt-in Plaintiffs a written Notice of Settlement, which describes the settlement, the amount each will receive and how it was calculated, the nature and amount of the service payments to the Plaintiff and the Opt-in Plaintiffs Warren, Mahabir, Martinez, and Jolly, and the amount of attorney's fees and costs to be paid by Defendants to Plaintiff's counsel (Doc. 92-2). The Notice of Settlement also describes the consequences of accepting or not accepting the settlement and the procedure for making a claim (Id.). Plaintiff's counsel also provided email notice to each Opt-in Plaintiff and responded to inquiries from the Opt-in Plaintiffs relating to the settlement. The parties' joint motion represents that Plaintiff's counsel has received signed Claim Forms from all of the Opt-in Plaintiffs and no Opt-in Plaintiff has raised any objection to the settlement.

On June 26, 2017, 2017, the parties notified the Court of their settlement and their intention to seek approval from the Court (Doc. 91). The instant motion followed and was referred to me on August 25, 2017. A fairness hearing was held and the parties have submitted a Revised Settlement Agreement and Release (Doc. 98-1). The monetary terms discussed above remain the same.

## II. Discussion

*The Standard of Review*

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (alternation in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of

section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally-mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." Barrentine, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." Id. (quoting Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1946)).

The parties seek judicial review and a determination that their settlement of FLSA claims is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354-55 (11th Cir. 1982). If a settlement is not one supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. at 1353 (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946)).

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." Id. at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Id.

In determining whether a settlement is fair and reasonable, the Court considers the following factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel." Hamilton v. Frito-Lay, Inc., No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." Id. (citing Cotton v. Hinton, 559 F.2d 1331 (5th Cir. 1977)).

*Analysis*

The parties contend, and I agree, that there exists a bona fide dispute in this case over several issues, including the Defendant's "administrative" and "professional" employee exemption defenses under 29 U.S.C. § 213(a)(1), the computation of damages, the number of overtime hours worked by Plaintiff and the 32 Opt-in Plaintiffs, Defendants' "good faith" defenses under 29 U.S.C. §§ 259 and 260, and the "willfulness" requirement to trigger the third year of liability under 29 U.S.C. § 255. Now at issue is whether the terms of the parties' Revised Settlement are fair and reasonable.

*a) The common fund amount*

Defendants have agreed to pay no less than $976,000 to Plaintiff and the 32 Opt-In Plaintiffs for their alleged unpaid overtime damages. The payments are allocated to each individual based upon factors which include dates of employment, annual salary, opt-in date, and amount of paid/unpaid leave taken. At hearing, counsel represented that the formula made certain assumptions, based on a three year time period and a half time method of calculation, and the compensation agreed to was 13 hours of overtime every week, doubled for three years. This amount is represented to be "above the middle of the range" of amounts Plaintiffs were claiming. At my request, the parties have filed the net amounts to be received by Plaintiff (Doc. 98-2). Upon review, I agree with the parties that this calculation, based on objective factors, is reasonable and yields an excellent result to Plaintiffs.

*b) Service Payments*

The Revised Settlement Agreement also provides for service payments of $4,000 to the representative plaintiff, Mia Williams, $1,000 to Opt-in Plaintiff Warren, and $500 each to Opt-in Plaintiffs Jolly Mahabir, and Martinez. The parties argue that "courts have routinely approved service payments to class representatives in class actions, including FLSA collective actions," citing Su v. Elec. Arts, Inc., No. 6:05-cv-131-Orl-28JGG, 2006 WL 4792780, at *5 (M.D. Fla. Aug. 29, 2006); Plummer v. PJCF, LLC, No. 2:15-cv-37-FtM-38CM, 2015 WL 5952426, at *3 (M.D. Fla. Oct. 13, 2015); Ingram v. Coca-Cola Company, 200 F.R.D. 685 (N.D. Ga. 2001). I do not find this statement to be accurate. Rather, as Magistrate Judge Spaulding has noted:

> There is no provision for a "representative plaintiff" under the FLSA. As the Eleventh Circuit has observed, the collective action provision of the FLSA "is a fundamentally different creature than the Rule 23 class action. Even if the [FLSA] plaintiff can demonstrate that there are other plaintiffs

> 'similarly situated' to him, ... he has no right to represent them." Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1249 (11th Cir.2003) (per curiam). Because there is no "representative plaintiff" in FLSA collective actions, generally no incentive payment to a named plaintiff in an FLSA collective action is warranted. See, e.g., Ayers v. SGS Control Servs., Inc., Nos. 03 Civ. 9078(RMB), 06 Civ. 7111(RMB), 2008 WL 4185813, at * 5-7 (S.D .N.Y Sept. 9, 2008) (discussion out-of-circuit cases involving incentive payments to named plaintiffs).
>
> Courts have, however, awarded incentive fees to named plaintiffs who establish that they faced substantial risks by participating in the lawsuit and incurred actual expenses during the litigation.

Heath v. Hard Rock Cafe Int'l (STP), Inc., No. 6:10-CV-344-ORL-28, 2011 WL 5877506, at *4-5 (M.D. Fla. Oct. 28, 2011), *report and recommendation adopted,* 2011 WL 5873968 (M.D. Fla. Nov. 23, 2011). Here, the parties represent that these payments are for the "substantial" services these Plaintiffs provided to the collective, including attendance at mediation, depositions, assistance with investigation or assistance in communication with other Plaintiffs. The greater compensation to Ms. Williams also recognizes her exposure to a cost judgment if the case was unsuccessful. While I find that such payments are not "routine," in view of these facts, and noting that this compensation did not diminish the compensation paid to other Opt-in Plaintiffs (who have been advised of the payments and have not objected), I find the service payments to be reasonable.

### c) Attorney's Fees and Costs

Pursuant to 29 U.S.C. § 216(b), "[t]he court in [an FLSA action] shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." In a collective FLSA action, "the Court must determine the reasonableness of attorneys' fees to minimize the conflicts that may arise between the attorney and the plaintiffs." Goldsby v. Renosol Seating, LLC, 294 F.R.D. 649, 655 (S.D. Ala. 2013), citing Piambino v. Bailey,

610 F.2d 1306, 1328 (5th Cir.1980). The parties' Revised Settlement Agreement provides:

> (3) Subject to court approval, Defendant will pay Plaintiffs' counsel, Sean Culliton, Esq., Trust Account, a total sum of $500,000.00 in attorneys' fees, and an amount not to exceed $17,500.00 for costs. The attorneys' fees are to be divided equally among the three firms representing Plaintiff and Opt-In Plaintiffs. **Attorneys' fees were separately negotiated. Any portion of the cost allocation not used shall be allocated on a pro rata basis to the Plaintiffs according to the method of Plaintiffs' counsel allocation**. Plaintiffs' counsel will provide an exact accounting of the final costs with submission of approval of this Settlement Agreement to the Court. **Sean Culliton, Esq. LLC**[3] shall provide a W-9 Form to Defendant. Defendant will issue to Sean Culliton, Esq. Trust Account and Plaintiffs a Form 1099 (box #14) for a pro rata portion of this payment. If the Court does not approve any part of the attorneys' fee/cost award, Defendant shall not pay any fees/costs to Plaintiffs' counsel that are not approved by the Court and the remainder of this Agreement remains valid and enforceable subject to all available appellate rights relating to Plaintiffs' fees/costs application.[footnote omitted] Both Parties agree not to appeal the enforceability of the remainder of the settlement agreement regardless of the Court's approval or non-approval of the attorneys' fee/cost award. **Plaintiffs bear all fees/costs in excess of the $500,000.00.** To the extent the Court does not approve any portion of the attorneys' fees and costs, the portion not approved **shall be distributed to Plaintiffs on a pro rata basis pursuant to Plaintiffs' counsel allocation**.

(Doc. 98-1, pgs. 3-4 – emphasis added). I cannot find this provision to be reasonable.

In Plaintiffs' counsel's Brief in support of attorney's fees and costs (Doc. 93), they state that: "these attorney's fee and cost amounts were negotiated at the mediation separately from the amounts to be paid to the Plaintiff and Opt-In Plaintiffs. The amount of attorney's fees was negotiated on a common fund basis as 30% of the overall settlement funds in the amount of $1,500,000.00." As discussed at hearing, I do not

---

[3] At hearing, I questioned whether a law practice can be constituted as an LLC under Florida law. Although not pertinent to the motion, counsel may wish to consult the Rules Regulating the Florida Bar and FLA. STAT. §621.12, in order to assure that this entity is in compliance with all appropriate provisions.

- 9 -

understand how a fee that was negotiated to be 30% of the overall settlement funds can be said to be reached "separately" and without regard to the amount paid to Plaintiffs.

Counsel argue that "the fee percentage of 30% is consistent with the agreement between Plaintiff and Plaintiff's counsel and which all Opt-In Plaintiffs agreed to upon joining the case." (Doc. 93 at 13). According to the Declaration of John C. Davis, Mr. Davis and his co-counsel, Mr. Talbott and Mr. Culliton, undertook the representation of Plaintiff Williams pursuant to a contingency fee agreement that provides that the contingent fee will be calculated based on the schedule of percentages prescribed by Rule 4-1.5 of the Florida Bar Rules of Professional Conduct (Doc. 94, ¶5). The Eleventh Circuit has questioned the validity of contingency fee agreements in FLSA cases. Silva v. Miller, 307 F. App'x 349, 351-2 (11th Cir. 2009) ("To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee.") Thus, this district has not found contingency agreements to be controlling in FLSA cases. See, e.g., Lowery v. Auto Club Grp., Inc., No. 617CV359ORL40GJK, 2017 WL 3336464, at *2-3 (M.D. Fla. Aug. 3, 2017) ("As the Court interprets the Lynn's Food Stores, Inc. and Silva cases, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide. In such a case, any compensation for attorney's fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award."); Zegers v. Countrywide Mortg. Ventures, LLC, 569 F. Supp. 2d 1259, 1268 (M.D. Fla. 2008) (plaintiff's counsel not entitled to a 40% contingency fee in FLSA case, and "the Court, therefore, must determine what is a reasonable fee and will find any contingency fee

agreement that requires an additional payment to be unenforceable."); Sutton v. Clayton Hosp. Grp., Inc., No. 6:14-CV-571-ORL, 2015 WL 4066915, at *5 (M.D. Fla. June 30, 2015) (rejecting attempt to collect contingent fee without oversight, noting: "I am unwilling to recommend approval of this FLSA settlement agreement without conducting a lodestar analysis.").

Turning to review of the fee sought, Plaintiffs' counsel have not provided the particularized information regarding hours worked and rates charged, which is necessary to perform the lodestar analysis. The Court has no information concerning the rates charged by counsel. As for hours expended, according to their brief, "Plaintiff's Counsel have expended nearly 800 attorney hours as well as numerous paralegal hours in the prosecution of this case." (Doc. 93 at 6). With respect to attorney time, five hundred thousand dollars divided by 800 equals $625 an hour. This is a handsome rate and well above that found reasonable in other FLSA cases in this district.[4] That said, this calculation does not take into account the "numerous paralegal hours" (which have not been quantified or presented), inclusion of which would necessarily reduce the calculated hourly amount. Moreover, the result in this case was exceptional and such a fee does not appear to take away from the excellent recovery each Plaintiff will receive. Thus, this fee may well be reasonable. But, absent more information to calculate the lodestar, I cannot make that determination on this record.

Additionally, the highlighted fee and cost provisions in the parties' agreement cannot support a finding of reasonableness. The agreement provides: "Plaintiffs bear all

---

[4] Indeed, this is a significantly higher rate than the $350 an hour Mr. Davis conceded was reasonable for Mr. Talbott's services in an FLSA case in this District, just last year. See Declaration of John C. Davis, Esquire, filed in Keith Thompson v. Healthy Home Environmental, et al., Case No. 8:15cv2905-JDW-JSS, Doc. 14-3 (M.D Fla. June 23, 2016).

- 11 -

fees/costs in excess of the $500,000.00." This is not consistent with the mandate that defendant shall pay a reasonable attorney's fee. 29 U.S.C. § 216(b). The parties' also state: "Any portion of the cost allocation not used shall be allocated on a pro rata basis to the Plaintiffs according to the method of Plaintiffs' counsel allocation" and "To the extent the Court does not approve any portion of the attorneys' fees and costs, the portion not approved shall be distributed to Plaintiffs on a pro rata basis pursuant to Plaintiffs' counsel allocation." This makes no sense. Why would this sum not be allocated the same as the compensation paid to Plaintiffs?

For the foregoing reasons, on this record, I cannot find that the fees and costs are reasonable.

*d.) Release Provisions*

At hearing, I told the parties I could not recommend approval of the overbroad release provisions in their agreement. The parties were given an opportunity to amend the language but, upon review of the new language in their revised agreement, my position has not changed. The revised agreement provides:

> This Settlement Agreement and Release is entered into by and between the following parties: (1) Mia Williams, as class representation of the following: Rachel Luis, Vanessa Martinez, Leanne Watson, Myrlene Warren, Marie Coriolan, Sabrina Lee, Ruthy Garcia, Maritza Campana, Shawntia Hall, Alexandra Jolly, Kerri Hayes, Altoniece Mahabir, Yvonne Navarro, Miguel Pena, Cherilyn Heitz, Ruth Ambroise, Sandra Borthwick, Emmane Pemberton, Silvana Amaducci, Shanique Martin-Johnson, Lausane Augustin, Cheryl Crimu, Wilson Manigat, Decoursey Jamison, Lance Edinburg, Luke Hepburn, Edith Ratcliff, Mary Johnson, Myrtle Clark, Racquel Williams, Gilbert Isaac, Phyllis Lee-Camara and their heirs, executors, administrators, successors, and assigns (collectively referred to as "Plaintiffs"); and (2) Defendants **or Defendants' affiliates, their parents, predecessors, successors, assigns, subsidiaries, affiliates, and insurers, and their past, present and future directors, officers, shareholders, members,**

> employees, agents, insurers and attorneys both individually and in their capacities as directors, officers, shareholders, members, employees, agents, insurers and attorneys ("Defendant").
>
> ...
>
> 3. Release of Claims. Subject to the approval of the Court, in consideration of the benefits inuring to the Parties hereto, each Plaintiff accepting the consideration specified in paragraph "1" above releases and forever discharges **(i) Defendant; (ii) any current or former subsidiary, parent company, affiliated entity, related entity, successor, assign, or division of Defendant; and (iii) any current or former manager or supervisor of the Plaintiff and Opt-In Plaintiffs, or with responsibility for the calculation or payment of wages, while employed in the role that is the subject of this litigation (collectively, the "Defendant Releasees")**, from **any and all claims that were or could have been brought by him or her in the Litigation based on the factual allegations in the Complaint, whether known or unknown, during the period that each Plaintiff held the position of Social Worker or Case Management Coordinator with Defendant or Coventry, until the date of execution of this Settlement Agreement limited to** wage and hour claims under federal, state, or local law, including such claims under the Fair Labor Standards Act or any state wage laws, state wage payment and collection laws, state overtime statutes, state common law and unjust enrichment, or pursuant to express or implied wage contract claims for overtime hours worked. Plaintiff and Opt-In Plaintiffs agree that they are receiving all compensation to which they are entitled up to and including the date on which Plaintiff and Opt-In Plaintiffs sign this Revised Settlement Agreement. Plaintiff and the Opt-In Plaintiff acknowledge, agree and understand that they are estopped from bringing any subsequent action or suit on any and all such claims or later contending they are entitled to any such compensation. The parties agree that the dismissal with prejudice to be filed in the Litigation shall have no res judicata effect on any other claims not released by this Agreement.

(Doc. 98-1-emphasis added). The Court must review this provision to ensure that Defendants do not "use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA." Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010).

> Indeed, a plaintiff's FLSA claim–which is intended to remedy a defendants' violation of mandatory law–should not be used as leverage to procure a general release of all possible claims. Cf. Lynn's Food, 679 F.2d at 1352 (recognizing that "[t]he FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours"). For the same reasons, a general release may not be used to release a non-party. Even if the parties were to cabin the release to FLSA claims, the Court remains skeptical as to the propriety of releasing FLSA claims against a non-party.

Arguelles v. Noor Baig, Inc., 6:16-cv-2024-Orl-37TBS, slip op. at 2-3 (M.D. Fla. Feb. 24, 2017) (footnote omitted). The exceptionally broad definition of released parties in this settlement agreement is the opposite of narrowly tailored and cannot be approved. Moreover, I question whether the parties need the phrase:

> … any and all claims that were or could have been brought by him or her in the Litigation based on the factual allegations in the Complaint, whether known or unknown, during the period that each Plaintiff held the position of Social Worker or Case Management Coordinator with Defendant or Coventry, until the date of execution of this Settlement Agreement ....

The sentence, without this language, makes plain that the parties are agreeing to release the wage and hour claims.

### e) Other provisions

Other provisions are ill-worded or otherwise unenforceable. The agreement provides that "The Parties will evenly split the cost of the Parties' mediation with Jay M. Cohen." (Doc. 98-1, pg. 4). There are 33 Plaintiffs and five Defendants. As worded, are the parties to split the cost 38 ways?[5] The agreement also states that "[b]oth Parties" preserve all appellate rights in the instance the Court amends any portion of the Agreement. Id. It is assumed that the Parties mean "all" and not "both."

---

[5] Note that the Case Management and Scheduling Order (Doc. 87) provides that mediation costs are to be "borne equally by the Parties."

- 14 -

The settlement agreement contains a "non-publicity" clause which provides that "[t]he Parties shall not issue any press releases, website advertisements, or otherwise publicize this Agreement." (Doc. 98-1, ¶13). This language, which fails to define "otherwise publicize" comes dangerously close to a confidentiality clause, which is disfavored in the FLSA context. See Pariente v. CLC Resorts and Developments, Inc., No. 6:14-cv-615-Orl-37TBS, 2014 WL 6389756 at *5 (M.D. Fla. Oct. 24, 2014) (nondisclosure provisions in FLSA settlements "thwart ... Congress's intent to ensure widespread compliance with the FLSA") (internal quotations omitted). Considering that the collective class has already been conditionally certified, notice of the terms of the settlement has already been sent, and the matter is pending before the Court in an open proceeding, the vague prohibition against publicity is likely unenforceable.

Finally, the Agreement states:

> 14. Retention of Jurisdiction. The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

As the Supreme Court has noted, where a court does not expressly retain jurisdiction, "enforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 382, 114 S. Ct. 1673, 1677, 128 L. Ed. 2d 391 (1994). In the event of further litigation between the parties, they would at that time, have to demonstrate the basis for the Court's jurisdiction. It is unlikely that a claim for breach of the settlement

agreement would raise a federal question or provide the basis for diversity jurisdiction. Absent justification for the Court to retain jurisdiction here, I do not recommend it.

A final note is in order. The deficiencies identified in this Report are fixable. A narrower release, a fuller explanation of the lodestar factors, and the correction or omission of provisions which are either poorly worded or inconsistent with FLSA principles would serve to change my reluctant "no" into an enthusiastic "well done." It is suggested that the Parties direct their efforts to addressing these matters in response to this Report. As presented, however, I cannot find the settlement agreement to be "a fair and reasonable resolution" of the FLSA issues.

### III. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the parties' Joint Motion for Final Approval of Settlement (Doc. 92) be **DENIED, without prejudice**.

### IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on October 16, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:


Presiding United States District Judge
Counsel of Record
Any Unrepresented Parties