UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MIA WILLIAMS,**

      **Plaintiff,**

v.                                                   **Case No: 6:16-cv-731-Orl-41TBS**

**COVENTRY HEALTH CARE OF
FLORIDA, INC., COVENTRY HEALTH
CARE, INC., AETNA LIFE
INSURANCE COMPANY, AETNA INC.
and AETNA MEDICAID
ADMINISTRATORS, LLC,**

      **Defendants.**
_____/

**ORDER**

THIS CAUSE is before the Court on the Joint Motion for Final Approval of Settlement ("Joint Motion," Doc. 92). United States Magistrate Judge Thomas B. Smith issued a Report and Recommendation ("R&R," Doc. 99), recommending that the Joint Motion be denied without prejudice. The Parties filed joint Objections (Doc. 100) to the R&R. As set forth herein, the Court agrees with Judge Smith that the Revised Settlement Agreement (Doc. 92-1) cannot be approved as drafted, and the Joint Motion will be denied without prejudice.

**I.**       **BACKGROUND**

The Amended Complaint (Doc. 90) alleges that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to pay certain employees required overtime pay. (Doc. 90 ¶¶ 2–3). This case was conditionally certified as a collective action under the FLSA, 29 U.S.C. § 216(b), and the class was defined as "All Social Workers employed by Defendant in the State of Florida within the three-year period immediately preceding the filing of this

case." (Nov. 28, 2016 Order, Doc. 36, at 2). In addition to the named Plaintiff, there are thirty-two other opt-in Plaintiffs. (*See* Doc. 98-1 at 9). Ultimately, the parties were able to come to a resolution of Plaintiffs' claims and filed the Joint Motion. Judge Smith held a hearing on the matter, (Min. Entry, Doc. 96), and permitted the parties to file a revised settlement agreement based on concerns he expressed at the hearing, (Oct. 3, 2017 Order, Doc. 97, at 1). The parties did so, and Judge Smith thereafter issued his R&R.

## II. ANALYSIS

Judge Smith points to several areas of concern in the Revised Settlement Agreement, including the reasonableness of the attorneys' fee provision; the requirement that Plaintiffs' pay any fees and costs in excess of those paid by the Defendants; the release of claims; the allocation of mediation costs; the non-publicity clause; and the retention of jurisdiction provision. (Doc. 99 at 8–16). Each will be addressed in turn.

### A. Attorneys' Fees

The Revised Settlement Agreement provides that Defendant will pay a total of $1,500,000.00. (Doc. 98-1 ¶ 1(a)). That amount is to be distributed as follows: $6,500.00 paid to five of the Plaintiffs for their services in participating in the litigation on behalf of the other Plaintiffs, (*id.* ¶ 1(a)(1)); $976,000.00 to Plaintiffs as payment for back wages and liquidated damages, (*id.* ¶ 1(a)(2)); $500,000.00 in attorneys' fees, (*id.* ¶ 1(a)(3)); and $17,500.00 for costs, (*id.*). With regard to the attorneys' fees and costs, the provision further states that the "[a]ttorneys' fees were separately negotiated." (*Id.*).

#### 1. *Separately Negotiated*

The first issue raised by Judge Smith is whether the amount of attorneys' fees is reasonable. The parties cite *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009),

which suggests that courts should approve FLSA settlement agreements "without separately considering the reasonableness of the fee to be paid to plaintiff's counsel" where the settlement agreement "(1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; . . . (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff," and (4) "the settlement does not appear [un]reasonable on its face [and] there is [no] reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney," *id.* at 1228. The parties contend that their settlement meets all of these factors.

Judge Smith concluded that, despite the parties' argument to the contrary, the attorneys' fees were not separately negotiated. He concluded that the very fact that the amount of the attorneys' fee was contingent on the amount Plaintiffs recovered meant that the fees could not have been separately negotiated. This Court agrees with Judge Smith.

Per the parties' own representation, the amount of attorneys' fees was directly dependent on the amount of Plaintiffs' recovery. This cannot be reconciled with the concept of "separately negotiated." Plaintiffs appear to argue that because the percentage—thirty percent—was negotiated at the beginning of the litigation without Plaintiffs' counsel knowing what the ultimate recovery was going to be, it was separately negotiated. This type of "separate negotiation" is not what is contemplated in *Bonetti*. There, Judge Presnell reasoned that where the parties separately determine what is a reasonable payment to the plaintiff and what—wholly apart from the plaintiff's payment—is a reasonable attorneys' fee in a particular case, then there is a minimal chance that the attorneys' fees impacted the plaintiff's recovery, and therefore, a less in-depth review is necessary. *See id.* at 1228. Indeed, *Bonetti* itself differentiates between a separate negotiation and

a contingency fee situation. *See id.* at 1226 (distinguishing Eleventh Circuit precedent that addresses contingency fee arrangements).

The parties argue that this is not a contingency fee case—it is a common fund case. But for purposes of the separately negotiated analysis, such a distinction makes no difference. In both types of cases, the amount of attorneys' fees are directly contingent on the amount of the plaintiffs' recovery, which is the problematic element. The attorneys' fee cannot be separately negotiated if it is derived from the amount of Plaintiffs' recovery.

### 2. *Common Fund Analysis*

Because the fee was not separately negotiated, the Court must conduct a reasonableness analysis. Judge Smith concluded that he could not do so because Plaintiffs' counsel did not provide information upon which he could conduct a lodestar analysis. The parties argue that a lodestar analysis is not necessary—and indeed inappropriate—because this is a common fund case.

In general, a common fund case is where a pool of money is recovered, and from that pool—or fund—all of the plaintiffs are entitled to recover damages. This type of recovery is typically seen in class action suits where representative plaintiffs pursue the claims on behalf of the class, recover a certain amount of money for the class, and then the class members who have not opted out are able to recover a certain amount of damages from that fund of money. In these types of cases in the Eleventh Circuit, it is typically appropriate for the plaintiffs' attorneys to receive a percentage of the common fund as payment for their attorneys' fees. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). However, the question here is not whether the percentage method is appropriate in common fund class action cases; this is not a class action case. This is a collective action under the FLSA. Although the two have many similarities, they are not the same.

Permitting attorneys in class actions to recoup their fees and costs from a percentage of the common fund "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The percentage of the common fund approach "allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* In other words, in lieu of requiring each class member to contribute his or her fair share to the fees and costs associated with the litigation, the class members' total recovery is reduced and given to the attorneys.

This same logic, however, cannot be applied in the FLSA collective action context. Unlike most other types of claims, "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). So, if a plaintiff is owed back wages under the FLSA, he or she is entitled to be paid those wages without reduction. And when a plaintiff is awarded back wages under the FLSA, he or she is also entitled to recoup reasonable attorneys' fees and costs from the defendant in addition to damages. 29 U.S.C. § 216(b) ("The court in such action shall, *in addition* to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added)). When these provisions are viewed together, it is clear that the percentage of the common fund analysis is not proper in FLSA cases.

As discussed above, when a common fund is created to compensate a class of plaintiffs and then reduced by a percentage in order to pay the attorneys' fees and costs, the plaintiffs' recovery is reduced. In the FLSA context, such an outcome undermines the statutory scheme set forth by Congress. FLSA plaintiffs, per the statute, are entitled to gain all of the benefit from

successful litigation without paying attorneys' fees and costs. The FLSA shifts the burden of paying fees and costs to the defendant. Utilizing the percentage of a common fund approach shifts the burden of the cost of litigation back to the plaintiffs in contravention of the statute.

The cases cited by Plaintiffs' counsel do not alter this conclusion. First, those discussing class action suits are inapplicable because this is not a class action. Second, although Plaintiff's counsel cites non-binding district court cases that have approved common fund attorneys' fees in the FLSA context, none of those cases discussed whether the common fund approach was appropriate, and therefore, they have minimal persuasive value.

In sum, simply awarding a percentage of the common fund in a FLSA collective action would contradict the statutory scheme and is impermissible.

### 3. Reasonable Attorneys' Fee

Because the percentage of the common fund analysis is inappropriate here, the Court must determine what is necessary to conduct a reasonableness analysis of the attorneys' fee award.

First, Plaintiffs argue that "an in depth analysis [of the attorneys' fee award] is not necessary unless the unreasonableness is apparent from the face of the documents," quoting *King v. My Online Neighborhood, Inc.*, 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D. Fla. Mar. 7, 2007). *King* is of little persuasive value. At the time that *King* was decided, there was some dispute among the district courts over whether attorneys' fees in FLSA settlement agreements had to be reviewed at all. Subsequently, the Eleventh Circuit clarified that courts were required to do so. *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).[1] Additionally, *King* was not a collective action, and even under that line of pre-*Silva* cases, courts seemed to agree that in FLSA collective

---

[1] Although *Silva* is an unpublished opinion, it is one of the few Eleventh Circuit opinions on the matter, and this Court views it as very persuasive authority.

actions, the attorneys' fee award had to be reviewed. *King*, 2007 WL 737575, at *3–4. Indeed, the rationale behind the pre-*Silva* distinction between collective and non-collective actions was because "most settlements of collective actions involve a lump sum settlement with an amount to be deducted for attorneys' fees. In such cases, it is necessary for the court to evaluate the overall fairness of the settlement and the benefit to the plaintiffs." *Id.* at *4. In other words, even the case relied on by Plaintiffs indicates that where there is a lump sum payment that includes attorneys' fees, a more in-depth analysis is necessary.

The only information regarding the attorneys' fee allocation here is that the agreement provides for Plaintiffs' counsel to be paid $500,000, that Plaintiffs' counsel have expended approximately 800 attorney hours as well as numerous paralegal hours, and that this case is likely more complicated than the average FLSA case because it is a collective action where the parties engaged in extensive discovery. As Judge Smith noted, this is not sufficient information for the Court to approve the settlement.

One of the primary reasons that the "FLSA requires judicial review of the reasonableness of counsel's legal fees [is] to assure . . . that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 F. App'x at 351. Specifically, in cases where one lump sum amount is offered by the defendants to cover both the plaintiff's damages and the attorneys' fees—as is the case here—there is a greater potential for a conflict to arise. The fact that Plaintiffs are receiving less than a full recovery combined with the fact that Plaintiffs' attorneys are receiving compensation that was negotiated in tandem with Plaintiffs' damages could result in Plaintiffs' recovery being tainted. That is not to say that anyone involved in this litigation acted unscrupulously. A plaintiff's recovery may be impacted indirectly or unconsciously, which is why the award must be scrutinized. *Caban v. Installation & Serv. Techs.,*

*Inc.*, 6:08-cv-1689-Orl-22DAB, 2009 WL 4730537, at *3 (M.D. Fla. Dec. 4, 2009) (noting that a plaintiff's recovery may be "tainted indirectly or unconsciously" due to the inherent conflict of interest that exists when an attorney is negotiating both the plaintiff's recovery and the attorney's fees); *see also Bouchard v. Florida Citrus World, Inc.*, 6:09-cv-2-Orl-31GJK, 2009 WL 2423300, at *2 n.2 (M.D. Fla. Aug. 4, 2009) ("Where a plaintiff is receiving less than full compensation, payment of fees necessarily reduces the plaintiff's potential recovery."). Therefore, regardless of whether there is any facial indication of collusion or deceit—which there is not here—the Court must independently evaluate the reasonableness of the fees.

In these circumstances, the lodestar method combined with the Court's common sense and expertise must be employed. *See Camden I Condo. Ass'n*, 946 F.2d at 774 ("The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards."); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court . . . may consider its own knowledge and experience concerning reasonable and proper fees . . . ."). Indeed, in this case, the information provided by the parties supports the necessity of a lodestar analysis. As noted by Judge Smith, without additional information, it appears that the hourly fee here would be almost double that normally awarded in FLSA cases. This is likely not accurate given that Plaintiffs' counsel has not provided the Court with even an estimate of the paralegal time expended on this matter. Further, it is likely that a higher than average fee would be appropriate in this case, but again, the parties have not provided the Court with any such justification.

Nevertheless, the Court acknowledges that the award of attorneys' fees should not become "a second major litigation." *Norman*, 836 F.2d at 1303 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). The Court can and should employ its common sense and expertise. However, a

certain amount of information is necessary for the Court to do so, and that minimum requirement is not met here. Accordingly, if the parties choose to submit an amended settlement agreement for approval, Plaintiffs' counsel will be directed to file adequate information for a lodestar analysis to be conducted.

### B. Release of Claims

Next Judge Smith expressed concerns about the breadth of the Release of Claims provision. While this Court understands Judge Smith's general concern of releasing unknown parties, the provision here goes to extreme lengths to narrowly define the claims that the Plaintiffs are releasing—specifically, only wage claims that arise out of Plaintiffs' employment with Defendants in their capacities as social workers or case management coordinators, that were or could have been brought in this litigation, and that accrued during a specific timeframe. Due to that extremely specific definition, the Court can adequately assess the value of the claims that are being released in this case and, therefore, determine whether the release is part of a fair and reasonable compromise. The Court is willing to approve the Release of Claims provision as currently drafted if the remaining problems with the Revised Settlement Agreement are corrected.

### C. Other Provisions

Judge Smith also identified a few other provisions of the Revised Settlement Agreement that were either ambiguous or problematic. First, paragraph 1(a)(3) states, in relevant part, that "Plaintiffs bear all fees/costs in excess of the $500,000.00 [paid by Defendants]." This provision is impermissible. *See Silva*, 307 F. App'x at 351 ("[T]he wronged employee should receive his full wages plus the [liquidated damages] penalty without incurring any expense for legal fees or costs." (quotation omitted)). If the parties choose to submit an amended settlement agreement for approval, that provision must be removed.

In the same paragraph, the Revised Settlement Agreement provides, "Any portion of the cost allocation not used shall be allocated on a pro rata basis to the Plaintiffs according to the method of Plaintiffs' counsel allocation." (Doc. 98-1 ¶ 1(a)(3)). The same type of language is used at the end of paragraph 1(a)(3) in regard to "any portion of the attorneys' fees and costs" that are not approved by the Court—that portion is also to be "distributed to Plaintiffs on a pro rata basis pursuant to Plaintiffs' counsel allocation." (*Id.*). Judge Smith expressed concerns regarding this allocation—why was the money being allocated "pursuant to Plaintiffs' counsel allocation" rather than based on Plaintiffs' damages allocations? In their Objections, the parties indicate that any excess fees or costs would be distributed per Plaintiffs' damages allocations. While the Court appreciates the clarification of the parties' intent, that intent is not what is written in the plain language of the Revised Settlement Agreement. If the parties choose to submit an amended settlement agreement for approval, they should amend the language in paragraph 1(a)(3) to reflect their intent that any excess fees or costs will be distributed to Plaintiffs based on the damages allocations instead of "Plaintiffs' counsel allocation."

Judge Smith also expressed concerns about a few unclear provisions of the Revised Settlement Agreement. Specifically he discussed the following: the allocation of mediation fees in paragraph 1(a)(5); the reference in paragraph 1(b) to "[b]oth parties" with regard to who may preserve appellate rights; the non-publicity clause in paragraph 13; and the retention of jurisdiction provision in paragraph 14. (Doc. 99 at 14–16). The parties do not object to the striking of the retention of jurisdiction provision. (Doc. 100 at 20). They do not address the other referenced provisions, and therefore, the Court presumes that they also do not object to striking the non-publicity clause and to fixing the problems with the other provisions. If the parties choose to submit

an amended settlement agreement for approval, the Court expects that these provisions will be amended or deleted accordingly.

### III.  CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Report and Recommendation (Doc. 99) is **ADOPTED** and **CONFIRMED** as amended herein.

2. The Joint Motion for Final Approval of Settlement (Doc. 92) is **DENIED without prejudice**.

3. **On or before April 16, 2018**, the parties shall file either: (1) a renewed motion for settlement approval with an amended settlement agreement conforming to the parameters set forth in this order and information from which the Court can conduct a lodestar analysis or (2) a status report regarding the further litigation of this case.

**DONE** and **ORDERED** in Orlando, Florida on March 26, 2018.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record